UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -

SCOTT SHIELDS,
                 Defendant.

------------------------------------X

07 Cr. 320-01 (RWS)

SENTENCING OPINION

**Sweet, D.J.**

On March 27, 2008, Scott Shields ("Shields" or "Defendant") appeared before the Honorable Andrew J. Peck and pleaded guilty to one count of Conspiracy to Fraudulently Obtain Federal Funds and to Commit Mail Fraud, in violation of 18 U.S.C. § 371, one count of Theft of Government Funds, in violation of 18 U.S.C. §§ 641 and 642, and one count of Mail Fraud, in violation of 18 U.S.C. §§ 1341 and 1342. For the reasons set forth below, Shields will be sentenced to 8 months imprisonment and 3 years supervised release. Shields also will be required to make restitution of $49,439.08, and pay a special assessment of $300.

**Prior Proceedings**

On April 17, 2007, Indictment 07 Cr. 320 was filed in

1

the Southern District of New York. Count 1 charges that from September 2001, up to and including October 2003, in the Southern District of New York and elsewhere, Scott Shields, Patricia Shields, and others known and unknown, conspired together to steal and receive money in excess of $1,000 from the Department of Homeland Security's ("DHS") Federal Emergency Management Agency ("FEMA") and from the American Red Cross, in violation of 18 U.S.C. §§ 641 and 1341. Count 2 charges that from September 2001 up to and including October 2003, in the Southern District of New York and elsewhere, Scott Shields and Patricia Shields unlawfully, through fraud and deceit, received approximately $38,906.00 in FEMA Mortgage and Rental Assistance to which they were not entitled. Count 3 charges that in July 2002 and August 2002, in the Southern District of New York and elsewhere, Scott Shields and Patricia Shields unlawfully, through fraud and deceit, caused the American Red Cross to have the United States Postal Service deliver a check in the amount of $10,533.08 to Scott Shields at 225 Rector Street, Apartment 23G, New York, NY.

On March 27, 2008, Defendant pleaded guilty to his criminal conduct as charged.

The Government has presented its position on the application of the U.S. Sentencing Guidelines in a Pimintel

letter, as follows:

- Pursuant to §3D1.2, Counts One, Two and Three are grouped.

- Section 2B1.1 is the guideline applicable to the instant offense. Because Defendant was convicted of an offense with a statutory maximum penalty of 20 years, the case offense level is seven, pursuant to §2B1.1(a)(1).

- Because the loss exceeded $30,000, a six-level increase in the offense level is warranted pursuant to §2B1.1(b)(1)(D).

- Defendant has accepted responsibility for his actions. As such, a two-level reduction in the offense level is warranted pursuant to §3E1.1(a).

- The offense level is therefore 11.

- Assuming a Criminal History Category of I, the Guideline range is 8 to 14 months.

Sentencing is scheduled for October 14, 2008.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines (the "Guidelines") established by the United States Sentencing Commission. As the Supreme Court

3

explained in Gall v. United States, 128 S.Ct. 586 (2007):

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented.

Id. at 596 (internal citation and footnote omitted). Thus, in addition to analysis of the Guidelines, the sentence imposed here results from consideration of:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed-
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for-

>    (A) the applicable category of offense
>    committed by the applicable category of
>    defendant as set forth in the guidelines .
>    . . . ;
>
> (5) any pertinent policy statement . . . [issued by
> the Sentencing Commission];
>
> (6) the need to avoid unwarranted sentence
> disparities among defendants with similar records
> who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims
> of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 111.

In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 128 S. Ct 558, 571 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is warranted in the instant case.

**The Defendant**

The Court adopts the facts set forth in the Probation

Department's Presentence Investigation Report ("PSR") with respect to Defendant's personal and family history.

**The Offense Conduct**

The following description draws on the PSR. The specific facts of the underlying conduct are adopted as set forth in that report.

Following the events of September 11, 2001, Scott Shields and Patricia Shields, who are brother and sister, applied for Mortgage and Rental Assistance from FEMA by providing information in-person in Manhattan, via telephone and in writing. The FEMA Mortgage and Rental Assistance program has certain eligibility criteria that applicants had to satisfy in order to qualify for benefits in the wake of the September 11 tragedy. Generally, applicants had to either have resided in the vicinity of the World Trade Center on September 11, 2001, been injured as a result of the September 11 attack, or had their business activity significantly affected by the events of September 11, either because that business was located in lower Manhattan or depended upon business/customers that were residents in lower Manhattan.

When they applied for FEMA Mortgage and Rental

Assistance shortly after September 11, 2001, Scott and Patricia Shields were not eligible for assistance under the program because they were residing and working in Greenwich, Connecticut at the time. Despite the fact that they were not eligible for the FEMA assistance, they represented in application materials that they lived or worked around the World Trade Center site at the time of the disaster. Records obtained by the Government in the course of the investigation reflect (and witnesses have confirmed) that Scott and Patricia Shields were renting a home in Greenwich as of September 11, 2001, and were subsequently evicted from that home the following month, in October 2001, for non-payment of rent.

As a result of their application for FEMA Mortgage and Rental Assistance, Scott and Patricia Shields received a total of $38,906, in a series of payments that were based on successive renewal applications. Each of these applications contained misstatements regarding (1) where the defendants resided at the time of the 9/11 attacks, and (2) how they had used the previously paid assistance.

Specifically, the Shields misrepresented that they were living in an apartment in lower Manhattan at the time of the September 11 attacks. While they did relocate to an apartment in

7

lower Manhattan after they were evicted from their rental property in Greenwich, they were not residing in that apartment at the time of the World Trade Center attack. In addition, although they represented that they had used monies received from the FEMA Mortgage and Rental Assistance program in order to pay rent owed on their lower Manhattan apartment, records reflect that the Shields did not use any of the FEMA monies for this purpose, and were entirely delinquent in making rent payments on their lower Manhattan apartment from the time they moved in until they were subsequently evicted for non-payment of rent.

In addition, following the events of September 11, 2001, Scott and Patricia Shields also applied for assistance from the American Red Cross. Based on the misrepresentation that at the time of the attacks they resided below Canal Street in Manhattan (which misrepresentation was made by the Shields in-person to a Red Cross volunteer in Manhattan), the Red Cross paid the defendants a total of $10,533.08. This payment was made by check, which was mailed from the Red Cross in Virginia to the Shields' lower Manhattan address, to which they moved following the events of September 11.

On March 20, 2007, Scott and Patricia Shields were arrested. They are being held accountable for a combined total

of $49,439.08 received from FEMA and the American Red Cross.

**The Relevant Statutory Provisions**

The maximum statutory sentence for violation of 18 U.S.C. § 371 is five years imprisonment. Count I therefore constitutes a Class D felony, pursuant to 18 U.S.C. § 3559(a)(4). There is no applicable statutory minimum sentence.

The maximum statutory sentence for violation of 18 U.S.C. § 641 is ten years imprisonment. Count II therefore constitutes a Class C felony, pursuant to 18 U.S.C. § 3559(a)(3). There is no applicable statutory minimum sentence.

The maximum statutory sentence for violation of 18 U.S.C. § 1341 is twenty years imprisonment. Count III therefore constitutes a Class C felony, pursuant to 18 U.S.C. § 3559(a)(3). There is no applicable statutory minimum sentence.

The Court may also impose a term of supervised release of up to three years, pursuant to 18 U.S.C. § 3583(b)(2).

The maximum fine for each Count is the greater of $250,000 or twice the gross loss or gain resulting from the

offense, pursuant to 18 U.S.C. § 3571. A special assessment of $300 is mandatory, pursuant to 18 U.S.C. § 3013.

Defendant is eligible for not less than one and no more than five years' probation, pursuant to 18 U.S.C. § 3561(c)(1). Because the offense is a felony, one of the conditions outlined in 18 U.S.C. § 3563(b) must be imposed as a condition of probation, pursuant to 18 U.S.C. § 3563(a)(2).

**The Guidelines**

The May 1, 2008 edition of the United States Sentencing Commission Guidelines Manual has been used in this case for calculation purposes, pursuant to § 1B1.11(a).

Counts I, II and III are grouped pursuant to §3D1.2(d) because the offense level is determined largely on the basis of the total amount of harm or loss.

The guideline for a violation of 18 U.S.C. § 641 is found in §2B1.1 provides for a base offense level of 7 pursuant to §2B1.1(a)(1).

Because the loss exceeded $30,000 but was less than

10

$70,000, pursuant to §2B1.1(b)(1)(D) the offense level is increased by six.

Based on Defendant's plea allocution, Defendant has shown a recognition of responsibility for the offense. Pursuant to §3E1.1(a), the offense level is reduced by two.

Accordingly, the applicable offense level is 11.

On April 25, 1990, Defendant was arrested on charges of Conspiracy to Commit Bank Fraud, and on October 24, 1990, Defendant was sentenced to three years probation and six months home confinement, as well as $147,804 restitution and a special assessment, in the U.S. District Court for Connecticut. Further details regarding this conviction are not currently available. In any event, due to the age of the conviction, it merits no criminal history points, in accordance with §4A1.2(e)(3). Defendant therefore has zero criminal history points and a Criminal History Category of I.

Based on a total offense level of 11 and a Criminal History Category of I, the Guidelines range for imprisonment is 8 to 14 months.

The Guidelines range for a term of supervised release is at least two, but not more than three years, pursuant to §5D1.2(a)(2).

Because the applicable guideline range is in Zone C of the Sentencing Table, Defendant is not eligible for probation, pursuant to §5B1.1, application note 2.

The fine range for the instant offense is from $2,000 to $20,000 or twice the gross gain or loss resulting from the offense, pursuant to §5E1.2(c)(3)(A) and (c)(4). Subject to the Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release imposed, pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,076.83 to be used for imprisonment, a monthly cost of $301.80 for supervision, and a monthly cost of $1,905.92 for community confinement.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified

in 18 U.S.C. § 3553(a) in order to impose a sentence "sufficient, but not greater than necessary," as is required in accordance with the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. Pursuant to all of the factors, it is hereby determined that a sentence within the Guidelines framework is warranted.

**The Sentence**

For the instant offenses, Scott Shields will be sentenced to 8 months imprisonment and a three-year term of supervised release.

Mr. Shields has pled guilty to defrauding the American Red Cross and FEMA, in an attempt to exploit programs that were providing financial assistance to people affected by one of this country's greatest tragedies. This is not Defendant's first interaction with the criminal court system, as he has a prior conviction for bank fraud. Although the conviction was 18 years ago, it was for a serious offense, and appears to have involved a significant sum.

Although both Defendant and his sister have expressed concern for the care of their elderly mother and the survival of

Patricia Shields' business should they serve a period of incarceration, these situations are not extraordinary, and in light of the gravity of Defendant's crimes and his past criminal history, do not justify a non-Guidelines sentence. In view of these considerations, however, Defendant is being sentenced at the bottom of the Guidelines range.

Defendant is directed to report to the nearest United States Probation Office within seventy-two hours of release from custody to commence a three-year term of supervised release. It is recommended that Defendant be supervised by the district of her residence.

As mandatory conditions of his supervised release, Defendant shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; and (4) cooperate in the collection of DNA as directed by the probation officer.

The standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional three special conditions:

(1) Defendant shall provide the probation officer with

access to any requested financial information.

(2) Defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless Defendant is in compliance with the installment payment schedule.

(3) Defendant shall participate in a mental health program approved by the U.S. Probation Office. Defendant shall continue to take any prescribed medications unless otherwise instructed by the health care provider. Defendant shall contribute to the costs of services rendered not covered by third-party payment, if Defendant has the ability to pay. The Court authorizes the release of available psychological and psychiatric evaluations and reports to the health care provider.

The fine in this case is waived. However, it is ordered that Defendant shall make restitution, payable to the Clerk, U.S. District Court, 500 Pearl Street, New York, N.Y., for disbursement to the following persons in the following amounts:

$10,533.08 is owed to:

> Frank R. Favilla
> Investigator
> American Red Cross 9/11 Program
> 195 Willis Avenue, Suite #212
> Mineola, NY  11501

$38,906 is owed to:

> Janie Cullers
> Financial Management Specialist
> FEMA Lockbox
> P.O. Box 70941
> Charlotte, NC  28272-0941

The factors in 18 U.S.C. § 3664(f)(2) were considered in formulating the payment schedule.  If Defendant is engaged in a BOP non-UNICOR work program, Defendant shall pay $25 per quarter toward the criminal financial penalties.  However, if Defendant participates in the BOP's UNICOR program as a grade 1 through 4, Defendant shall pay 50% of his monthly UNICOR earnings toward the criminal financial penalties, consistent with BOP regulations at 28 C.F.R. § 545.11.  Any payment made that is not payment in full shall be divided proportionally among the persons named.  No further payment shall be required after the sum of the amounts actually paid by all co-conspirators has fully covered the compensable injury.

The remainder of restitution shall be paid in monthly installments of at least $200 over a period of supervision to commence 30 days after the date of release from custody.

Defendant shall notify the United States Attorney for this district within 30 days of any change of mailing or residence address that occurs while any portion of the restitution remains unpaid.

A special assessment of $300, payable to the United States, is mandatory and shall be due immediately.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for October 14, 2008.

It is so ordered.

**New York, NY**
**October 9 , 2008**

_____
ROBERT W. SWEET
U.S.D.J.